**UTAH FARM BUREAU MUTUAL INSURANCE COMPANY, Plaintiff and Appellant,**

v.

**ORVILLE ANDREWS & SONS, d/b/a Nebo Black Angus Ranch, Orville Andrews and Neldon Andrews, Defendants and Respondents.**

No. 18239.

Supreme Court of Utah.

June 10, 1983.

Stephen G. Morgan and Steven K. Walkenhorst, Salt Lake City, for plaintiff and appellant.

R.C. Skeen, Salt Lake City, Ray H. Ivie, Provo, for defendants and respondents.

HOWE, Justice:

Utah Farm Bureau Mutual Insurance Company (Utah Farm Bureau) issued a farm liability policy to Orville Andrews and Sons (the Andrews). On both parties' motions for summary judgment the trial court ruled that the Andrews' feeder truck, which was involved in a traffic accident on a public highway while conveying cattle feed to a leased field, was not excluded from coverage by the policy. Utah Farm Bureau appeals seeking reversal of the summary judgment or remand of the case for trial.

Eleven years ago the Andrews bought a two ton Ford truck chassis that they later modified by the addition of a Gehl feeder box which they used to spread feed for cattle. The feeder box was welded to the rear of the truck. The feeder truck never was registered as a motor vehicle nor did it receive a state safety inspection but was used year-round in and around the Andrews' feed lots. It, like the Andrews' manure spreader truck, had not been listed on the vehicle schedule of the insurance policy. However, two other trucks which were registered, licensed and were regularly used to haul grain and livestock to market on public highways, had been listed on the vehicle schedule of the automobile portion of the policy. The policy was renewed annually. The Andrews had not informed Utah Farm Bureau that the feeder truck would be used on the public highway. They considered the feeder truck and the manure spreader truck to be like other farm machinery.

When the traffic accident which precipitated this lawsuit occurred, the feeder truck was travelling a public highway enroute to leased property where the Andrews kept cattle and fed them daily. This leased property was five and one-half miles distant from their main feeding operation. This trip had been made by the truck six days per week for six weeks preceding the accident. These facts give rise to the controlling issue of this case: Does the language of this insurance policy exclude from coverage a feeder truck while it is so travelling the public highway?

Enumerating exclusions, the language of the insurance policy states:

This policy agreement does not apply: 2. under Coverages F[1], F[2], G, H, I, or J to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: b. any automobile owned or operated by, or rented or loaned to any insured; but this subsection b does not apply to bodily injury or property damage occurring on the insured premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the insured premises ...

Earlier in the policy "automobile" is defined:

Automobile means a land motor vehicle, trailer, or semi-trailer, but the word automobile does not include any crawler or farm type tractor, farm implement and, if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads....

Unless there is some ambiguity or uncertainty in an insurance policy, it should be enforced according to its terms; however, where the policy is ambiguous, doubt is resolved in favor of coverage. *American Casualty Co. of Redding Pa. v. Eagle Star Ins. Co.,* Utah, 568 P.2d 731 (1977). Since a policy is drawn by the insurer, ambiguities are construed against the insurer. *Williams v. First Colony Life Ins. Co.,* Utah, 593 P.2d 534 (1979). *Bergera v. Ideal National Life Ins. Co.,* Utah, 524 P.2d 599 (1974); *Christensen v. Farmers Ins. Exchange,* 21 Utah 2d 194, 443 P.2d 385 (1968); *Jorgensen v. Hartford Fire Ins. Co.,* 13 Utah 2d 303, 373 P.2d 580 (1962).

In holding that the insurance policy did not exclude coverage for the feeder truck,

the trial court concluded as a matter of law that the truck was a "farm implement" and not an "automobile" as defined in the policy. The policy excludes an automobile from coverage and in its definition of "automobile," lists three categories of vehicles which are not considered automobiles. They are: (1) any crawler or farm type tractor, (2) farm implement, and (3) if not subject to motor vehicle registration, any equipment which is designed for use principally off public roads. Recognizing that this vehicle is not a crawler or farm type tractor, and leaving aside the question of necessity of motor vehicle registration, we agree with the trial court's conclusion that the feeder truck is a farm implement.

The insurance contract provides no definition of a farm implement. However, husbandry is a term which is synonymous with farming; and, U.C.A., 1953, § 41–1–1(m) in our motor vehicle act defines an "implement of husbandry" as:

> Every vehicle which is designed for agricultural purposes and exclusively used by the owner thereof in the conduct of his agricultural operations.

Under that definition, the Andrews' feeder truck is an implement of husbandry because (1) it was modified by them so that it could be used for the sole purpose of feeding their cattle which is an agricultural purpose, and (2) it has been exclusively used for that agricultural purpose since it was so adapted over a decade ago. There was not even a suggestion that the truck was ever used for a non-agricultural purpose such as personal transportation. In this conclusion we are supported by the case of *Allred v. Engelmen,* 123 Tex. 205, 207, 61 S.W.2d 75, 77, 91 A.L.R. 417, 421 (1933), where the court held that " 'trucks consisting chiefly of truck chassis with galvanized iron or steel tanks permanently mounted thereon,' " which hauled water for irrigation and gasoline to tractors in fields, were "implements of husbandry" even though in so doing the trucks travelled distances of less than a mile on public highways.

Neither our statutory definition of an implement of husbandry nor the policy itself contains any restriction on the frequency or distance of the movement of a farm implement along a public highway. Thus Utah Farm Bureau's argument that the daily eleven mile round trip of the feeder truck on the public highway was more than an "incidental" use of the highway is unavailing. That argument is germane only when the third category of included vehicles is under consideration, viz., equipment which is not subject to state registration because it is only "incidentally" operated or moved upon a highway. Like the trial court, we need not rely on that category of inclusion.

Utah Farm Bureau further contends that if the feeder truck was a farm implement, it was an implement only while on the farm premises and engaged in farming operations; when the feeder truck took to the public highways to transport feed to cattle 5½ miles away, it lost its identity as a farm implement and became a transport vehicle merely engaged in farming operations. To so hold would do violence to the terms of the policy which, as has been pointed out, contains no restriction on the highway travel of a farm implement. Had the insurer desired to make such a restriction, it was within its power as drafter of the insurance contract to have included such a proscription. It did so in the case of the third category of included vehicles, as we have observed supra.

The case of *Nepstad v. Randall,* 82 S.D. 615, 152 N.W.2d 383 (1967), cited by Utah Farm Bureau, is not in point since the only question decided in that case was whether a golf cart while being operated on a golf course was not a "motor vehicle" within the meaning of that state's guest statute. The basis for that decision was that the legislature had narrowly drawn the definition of vehicles subject to that act and had restricted them to vehicles moving upon a public highway. No intent can be found in the insurance policy in the instant case to limit the definition of farm implements to off-highway farm implements.

Judgment is affirmed. Costs are awarded to the respondents.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.