The plaintiffs, Gary Lee Turner and Linda Turner (husband and wife), appeal from a summary judgment in favor of the defendant, State Farm Fire and Casualty Companies, in an action alleging breach of contract and bad faith refusal to pay insurance proceeds. We affirm in part; reverse in part; and remand.
In November 1988 the Turners purchased a partially constructed house. They insured against casualty to the house during construction by purchasing a State Farm builder's risk insurance policy that would convert to a homeowner's policy upon completion of construction. On February 3, 1990, while the Turners' house was under construction, a basement wall collapsed. The Turners filed a claim under their builder's risk insurance policy, but State Farm denied coverage, because, it said, the Turners' policy excluded both losses to a basement wall and any collapse caused by water pressure, and it said either exclusion would apply in this case.
On December 7, 1990, the Turners filed this action against State Farm, alleging breach of contract and bad faith refusal to pay insurance proceeds. On February 19, 1992, the trial court entered a summary judgment for State Farm on both counts. The Turners appeal.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment *Page 1031 
as a matter of law." Bussey v. John Deere Co., 531 So.2d 860,862 (Ala. 1988) (citing Chiniche v. Smith, 374 So.2d 872
(Ala. 1979)); Rule 56(c), Ala.R.Civ.P. When the movant has carried the burden of making a prima facie showing, by admissible evidence, that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, the party opposing the summary judgment motion has the burden of presenting substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, §12-21-12. "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); Ogle v. Long,551 So.2d 914, 915 (Ala. 1989). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 412, 413 (Ala. 1990); Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381,1383 (Ala. 1986).
 I.
The Turners argue that the summary judgment was improper as to their breach of contract claim for two reasons: (1) the policy, they say, did not exclude loss to a basement wall from coverage, and (2) they say they presented substantial evidence creating a genuine issue of material fact as to whether water pressure caused the basement wall to collapse. This Court has held that an insurance company has the right to limit its liability and write a policy with narrow coverage but that, when doubt exists as to whether an insurance policy provides coverage, the language used by the insurer must be construed liberally for the benefit of the insured and strictly against the insurance company. See Garrett v. Alfa Mutual Ins. Co.,584 So.2d 1327, 1330 (Ala. 1991); Guaranty Nat'l Ins. Co. v.Marshall County Bd. of Educ., 540 So.2d 745, 748 (Ala. 1989).
The builder's risk insurance policy that the Turners purchased from State Farm contained the following provision:
 "12. Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
". . . .
 "f. use of defective material or methods in construction, remodeling, or renovation, if the collapse occurs during the course of construction, remodeling, or renovation.
 "Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building."
(Emphasis added.)
The parties disagree on whether the term "foundation" in the above-quoted section of the policy encompassed basement walls so that loss to a basement wall would be excluded from coverage. The Turners argue that the term "foundation" would not encompass their basement walls because, they say, the walls were free standing when constructed and formed the interior walls of the first floor of the house. Mr. Turner filled dirt around the walls to make a basement sometime after their construction. The Turners contend that they understood the term "foundation" to mean the three-by-three foot piece of concrete under the basement wall.
In contrast, State Farm argues that the "foundation" of a house includes the basement walls, because, it says, the term "foundation" means "the whole masonry substructure of a building." State Farm cites this Court to definitions that support its contention in Webster's Ninth New CollegiateDictionary 487 (Merriam-Webster, Inc. 1989) and the United States Department of Agriculture's Handbook on Woodframe *Page 1032 House Construction. However, this Court has held that, in construing the language of an insurance policy, the language should be given the meaning that a person of ordinary intelligence would reasonably think the language had. NationalUnion Fire Ins. Co. v. City of Leeds, 530 So.2d 205, 207
(Ala. 1988).
Although State Farm's assertion that the term "foundation" encompasses the entire masonry substructure of a building may coincide with one of the definitions of "foundation" provided in the dictionary cited, this Court is not convinced that State Farm's definition is the meaning that a person of ordinary intelligence would reasonably give to the term "foundation." Instead, a person of ordinary intelligence could reasonably conclude, as the Turners say they did, that the term "foundation" refers only to the piece of concrete at the base of the wall; this conclusion is the only one possible when a house has no basement. Nothing in the Turners' policy defined the term "foundation" or indicated that it would or would not encompass a basement wall. Because it is this Court's policy to construe an insurance company's language most strictly against the company when doubt exists as to the meaning of that language, we conclude that the term "foundation" in the exclusionary provision of the Turners' builder's risk insurance policy was ambiguous.
When "ambiguity exists in the language of an exclusion, the exclusion will be construed narrowly so as to limit the exclusion to the narrowest application reasonable under the wording." Guaranty Nat'l, 540 So.2d at 748; see also AmerisureIns. Companies v. Allstate Ins. Co., 582 So.2d 1100, 1102
(Ala. 1991). Applying this principle, we conclude that the basement wall should not be excluded from coverage under the term "foundation" in the exclusionary section of the Turners' policy.
We therefore turn to the Turners' second contention as to why the summary judgment for State Farm was improper. Apparently, the Turners do not dispute the fact that, if water pressure caused the basement wall to collapse, their policy would not cover the damage. However, they argue that they presented substantial evidence creating a genuine issue of material fact as to whether water pressure caused the basement wall to collapse. We agree.
Although State Farm's expert, structural engineer James A. Durham, testified by affidavit that water pressure was one of the causes for the collapse of the basement wall, Durham did not inspect the Turners' house until five days after the wall had collapsed. However, Mr. Turner and Walter Gillespie, a realtor who inspected the basement on the day the wall collapsed, both testified by affidavit that on the day the wall collapsed the dirt on the basement floor was dry and the dirt behind the wall was dry. When the Turners deposed Durham, Durham admitted that if immediately after the collapse the dirt behind the wall was dry and the dirt on the basement floor was dry, "it would refute [Durham's] theory that . . . water pressure caused the [collapse]."
Therefore, we reverse the summary judgment as to the Turners' breach of contract claim and remand this cause for further proceedings.
 II.
We turn to the Turners' argument that the summary judgment was improper as to their bad faith claim. "Bad faith is the intentional failure by an insurer to perform the duty of good faith and fair dealing implied in law." Koch v. State Farm Fire Casualty Co., 565 So.2d 226, 229 (Ala. 1990). An insurer may be held liable for bad faith when it refuses to pay a claim and (1) has no lawful basis for refusing to pay and has actual knowledge of that fact, or (2) has intentionally failed to determine whether it had a lawful basis for refusing to pay.See Weaver v. Allstate Ins. Co., 574 So.2d 771, 773 (Ala. 1990);Jones v. Alabama Farm Bureau Mut. Cas. Co., 507 So.2d 396, 399
(Ala. 1986); Chavers v. National Security Fire Casualty Co.,405 So.2d 1, 7 (Ala. 1981). *Page 1033 
The Turners' bad faith claim against State Farm falls in the latter category. They argue that State Farm denied their claim before inspecting the property damage. Before addressing the Turners' argument, we point out that, as a general rule, the existence of a fact issue as to the validity of an insurance claim, created by evidence from either side, supplies a reason for an insurer to deny the claim and, necessarily, makes proper a summary judgment for the defendant on a bad faith claim.National Savings Life Insurance Co. v. Dutton, 419 So.2d 1357,1362 (Ala. 1982). However, in Jones, this Court carved out an exception to this general rule, holding that because one of several possible causes of property damage, identified by the insured to his insurance company's claims adjuster, would have supported a finding of coverage under the policy, the insurance company had a duty to examine the property to determine the cause of the damage. Jones, 507 So.2d at 400-01.
In support of their contention that State Farm denied their claim before an inspection, the Turners presented Mr. Turner's version, contained in his deposition testimony, of a conversation between Mr. Turner and Harrison on February 6, 1990, before Harrison inspected the site. Mr. Turner stated:
 "I walked around with [Harrison] while he walked out to look at the house. And he got his clipboard out and walked over toward the house. He said 'I'm afraid this is not covered.' He said the rain settled the foundation and it cracked and that wall fell in. And then I said, 'Well, if that's the case, . . . it's not covered?' And I told him, if that was the case, when we dug it up to fix it, we could see if the footing foundation was cracked. And he said well, that might not have been the reason. He changed . . . to water buildup had pushed it in. Then he said that wasn't covered either. And then he changed again when I told him there wasn't any water in the basement after it fell in, which there wasn't. But it rained in there — it rained three or four inches after the fact over the weekend after it fell. He said well, that might not have been the thing either. And then he decided it was water again, that I didn't have any drainage pipes down there. And I said, 'Well, when we dig it up, if I have drainage pipes, is it covered?' Then he backed out on that being the reason. That's when I just said, 'Well, forget it.' Then he said he would get an engineer and send up to determine what had caused it."
However, during his deposition Mr. Turner also admitted that "the day at the house, [February 6, 1990,] . . . [Harrison] did not deny the claim; [or] [h]e did at first and then he was gonna send an engineer." Further, the record establishes that on February 8, 1990, State Farm sent Durham, the structural engineer, to the Turners' house to determine the cause of the collapse. On February 19, 1990, Durham submitted to State Farm a report on his inspection of the Turners' house and his opinion regarding the cause for the collapse of the basement wall. On February 21, 1990, Harrison notified the Turners' attorney that State Farm was denying the claim.
At most, the quoted portion of Mr. Turner's deposition testimony establishes that, because Mr. Turner says he told Harrison that the basement was not wet when the wall collapsed, State Farm had a duty, under this Court's holding inJones, to examine the property to determine the cause of the damage. State Farm fulfilled that duty. Therefore, we conclude that State Farm made a prima facie showing, unrebutted by the Turners, that it was not guilty of bad faith.
We affirm the summary judgment for State Farm as to the bad faith claim.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, SHORES, HOUSTON and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
ADAMS and STEAGALL, JJ., concur in part and dissent in part. *Page 1034